Meenoo Chahbazi (No. 029568)
ROBAINA & KRESIN PLLC
5343 N. 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
mch@robainalaw.com

Attorneys for Plaintiff Vinita Bhatt

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Vinita Bhatt, an individual,

Plaintiff,

vs.

State of Arizona, David Dunaway, and
Daniel Czecholinski,

Defendants.

No.

**COMPLAINT**

(Family and Medical Leave Act,
Rehabilitation Act, Section 1981,
Section 1983, Fourteenth
Amendment)

(Jury Trial Demanded)

Plaintiff, Vinita Bhatt, by and through her counsel undersigned, alleges as follows:

1.      This action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act"), the Family Medical Leave Act, 29 U.S.C. 29 U.S.C. §2601 et seq. ("the FMLA"), 42 U.S.C. § 1983 (Section 1983), the Fourteenth Amendment to the Constitution of the United States, and the Civil Rights Act of 1866, Section 1981, 42 U.S.C. § 1981 ("Section 1981").

**PARTIES**

2.      Plaintiff Vinita Bhatt is a South Asian female, a citizen of the United States, and a resident of Maricopa County, Arizona.  Ms. Bhatt previously worked at the Arizona Department of Environmental Quality (ADEQ) from May 2001 to February 29, 2016.

3.      Defendant State of Arizona is a political body and state government that

receives and distributes federal financial assistance.

4.     Defendant David Dunaway is, and at all relevant times was, a resident of Maricopa County. Defendant Dunaway is the Groundwater Protection and Water Reuse Value Streams Manager at ADEQ.

5.     Defendant Daniel Czecholinski is, and at all relevant times was, a resident of Maricopa County.  Mr. Czecholinski is the Drinking Water Value Stream Manager, Water Quality Division at ADEQ.

## JURISDICTION

6.     The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

7.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

8.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

9.     Ms. Bhatt began her employment with ADEQ on or about May 26, 2001 as an Environmental Health Specialist.

10.     On approximately September 12, 2005, Ms. Bhatt was appointed to the Position of Environmental Program Specialist in Waste Water.

11.     On approximately October 21, 2013, she was appointed to the position of Capacity Development Coordinator.

12.     Ms. Bhatt received praise for her performance from her former Supervisor Anthony Bode, from the vendors that she worked with, and other co-workers.  She also received positive acknowledgments for her contributions and a number of certifications for her training and continued educational development.

13.      Supervisor Bode described that Ms. Bhatt "exhibits excellent work habits."

14.     For twelve years, from 2001 to 2013, Ms. Bhatt consistently met or exceeded performance expectations.

15.     By way of background, Ms. Bhatt's husband died in April 2013, and Ms. Bhatt's supervisor at that time was aware that she suffered from severe anxiety and depression after her husband's death.

16.     Ms. Bhatt is a qualified individual with a disability who suffers from long-term depression, related chest pain, difficulty breathing, a heart condition, and other ongoing medical conditions, which affected her from April 2013 through 2017.

17.     Ms. Bhatt also has a son who has a chronic health condition under the FMLA.  When her husband passed away, Ms. Bhatt had to assume full responsibility for caring for their son and supervising the treatment of his medical condition.

18.     As background evidence, ADEQ has acknowledged that it provided Ms. Bhatt with FMLA leave, including leave in June 2013 and on an ongoing basis. However, after granting her requests for leave, ADEQ discriminated against Ms. Bhatt by giving her a lower performance evaluation than she deserved on or about September 6, 2013 and by placing her on a performance improvement plan from 2013 to 2014.

19.     Upon information and belief, ADEQ intensified a policy or practice of targeting employees on medical leave in 2013, and continuing.  Ms. Bhatt's co-worker who worked in a similar position in the same department with some of the same managers also asserted that he was subjected to discrimination by ADEQ because of his FMLA medical leave and because of his disability starting in 2013, and continuing. This co-worker also repeatedly asserted that he was given a lower performance evaluation than he deserved and placed on a performance improvement plan because of his FMLA medical leave and because of his medical condition in 2013 to 2014, and he asserted that the disability and FMLA discrimination against him continued through the years that followed.

20.     Despite receiving a discriminatory performance review on September 6, 2013, and being given a PIP on or about December 2, 2013, Ms. Bhatt met the performance objectives of the PIP in 2013 and received a Meets Expectation on January 16, 2014.

21.     In September 2013, Ms. Bhatt was transferred to ADEQ's Safe Drinking Water Unit.  In approximately February 2014, Daniel Czecholinski became a Section Manager for the Safe Drinking Water Unit.  Mr. Czecholinski and Ms. Bhatt's direct supervisor, Steven Vevang, discriminated against Ms. Bhatt by holding her to higher standards than white male employees who did not have disabilities or FMLA leave, by giving her lower performance evaluations than she deserved, and by placing her on a Performance Improvement Plan.

22.     Ms. Bhatt's co-worker at the time, who is also nonwhite, and who also worked under the same supervisors, similarly asserted that he was subjected to higher standards than white employees who did not have disabilities or FMLA leave and that he was discriminated based on his race by Mr. Czecholinski and Steven Vevang with respect to his pay and evaluations.

23.     Ms. Bhatt was also discriminated against with respect to pay, her job duties, and her performance reviews, based on her gender, female.

24.     Ms. Bhatt was also paid less than white or non-South Asian employees, male employees, and employees without disabilities or FMLA leave, who were similarly situated to her, performed similar work, and had similar job duties as her.

25.     After a "Career Path Mapping" in approximately the summer of 2015, and continuing through February 2016 when Ms. Bhatt's employment ended, Ms. Bhatt was given lower pay than white or non-South Asian males in similar positions who did not have disabilities or FMLA leave.

26.     One or more South Asian female employees who also worked at ADEQ under Mr. Czecholinski additionally asserted that they were held to higher standards than white or non-South Asian employees and discriminated against based on their race and/or gender with respect to pay and evaluations.

27.     Mr. Czecholinski also expressed disapproval toward Ms. Bhatt's use of FMLA.  For example, Mr. Czecholinski regularly came to her cubicle to monitor her when she took FMLA leave.

- 4 -

28.     Upon information and belief, Mr. Czecholinski pressured Mr. Vevang to give Ms. Bhatt a lower performance rating in March 2015 and to place her on a PIP. Mr. Vevang advised Ms. Bhatt that Mr. Czecholinski directed him not to give Ms. Bhatt positive comments regarding her performance at their one-on-meetings. Mr. Vevang also told Ms. Bhatt that Mr. Czecholinski advised that Ms. Bhatt needed to take less FMLA leave.

29.     David Dunaway became Ms. Bhatt's supervisor on or about October 10, 2015, and at that time, Ms. Bhatt also worked under Daniel Czecholinski, who continued to be her section manager.

30.     Mr. Dunaway subjected Ms. Bhatt to severe or pervasive harassment and discrimination.

31.     Mr. Dunaway subjected Ms. Bhatt to hostility during meetings and repeatedly raised his voice with her and stated, "DO YOU UNDERSTAND?" Mr. Dunaway scrutinized Ms. Bhatt and stereotyped her as unable to communicate and perform her job duties based on her race, national origin and accent, despite her successful communication with customers and co-workers in her experiences of working for ADEQ over a decade.

32.     Mr. Dunaway lodged false accusations against Ms. Bhatt and he misrepresented that she did not send emails about several arrivals and departures.

33.     Mr. Dunaway's emphasis on Ms. Bhatt's absences in his February 28, 2016, Memorandum also demonstrates his discrimination against Ms. Bhatt on the basis of disability. Ms. Bhatt had received approval for intermittent FMLA in April 2015; however, Mr. Dunaway targeted Ms. Bhatt for her absences from April 2015 to February 2016 and criticized her for taking her intermittent FMLA leave on Fridays, "[r]egardless of leave type."

34.     Mr. Dunaway scrutinized Ms. Bhatt's work more harshly than that of White or non-South Asian, male employees who did not have disabilities or FMLA leave.

35.     Mr. Dunaway and Mr. Czecholinski attempted to set Ms. Bhatt up for failure.   Ms. Bhatt successfully completed all the goals in her July 2015 MAP. However, in approximately January 2016, when she was in the process of working on these goals and had almost completed them, Mr. Czecholinski and Mr. Dunaway forced Ms. Bhatt to assume new MAP goals and responsibilities, in addition to the goals set forth relating to her MAP in July 2015, which were already extensive.

36.     These new job responsibilities were yet another means of denying Ms. Bhatt equal employment opportunities and targeting Ms. Bhatt for termination.

37.     One or more additional South Asian female employees have also experienced discrimination while working under David Dunaway.

38.     On approximately December 17, 2015, Ms. Bhatt reported to Deputy Director Randall G. Matas that she was being subjected to harassment and discrimination by Supervisor David Dunaway. Based on this harassment and discrimination, she requested that Mr. Matas transfer her to another unit. Ms. Bhatt additionally requested that she receive a re-classification to Environmental Science Specialist (ESS) III, a position she had been denied because of the discrimination she had experienced. Ms. Bhatt followed up after the meeting by writing out her requests that ADEQ transfer and re-classify her position in a December 30, 2015 email.

39.     In a February 22, 2016 email, Ms. Bhatt reported to Mr. Czecholinski that she was being subjected to national origin discrimination and harassment by ADEQ and Mr. Dunaway. She pointed out that Mr. Dunaway repeatedly subjected her to demeaning treatment based on her national origin. She also indicated that Mr. Dunaway had assigned her new significant and time-consuming projects to set her up for failure. She further pointed out that based on her level of experience and job duties she should be classified as an ESS II or III and receive higher pay.

40.     Ms. Bhatt additionally submitted a complaint of discrimination based on national origin and sex to ADEQ on or about February 25, 2016.

41.     Unfortunately, instead of conducting a complete and unbiased

investigation of Ms. Bhatt's complaint, including interviews of relevant witnesses, ADEQ only interviewed managers such as Steven Vevang and disregarded evidence of Mr. Dunaway's hostility toward Ms. Bhatt.

42.     After Ms. Bhatt reported discrimination to ADEQ, including complaints In December 2015 and February 2016, ADEQ subjected her to reprisal and further discrimination by terminating her on February 29, 2016.

43.     After terminating Ms. Bhatt, ADEQ hired a white employee who is paid significantly more to do the same work as Ms. Bhatt.

44.     After terminating Ms. Bhatt based on discriminatory and retaliatory motives, she was replaced by a White, Grade 24 Employee who was paid a much higher salary than her. After repeatedly being denied re-classification, Ms. Bhatt was a Grade 20 Employee who earned approximately $40,000/year. After terminating Ms. Bhatt, ADEQ hired a white employee for her Capacity Development Coordinator job.   The new employee holds the same job previously held by Ms. Bhatt prior to her termination and performs the same job duties that Ms. Bhatt previously performed; however, the new employee is paid at a Grade 24 and earns approximately $70,000/year. The higher pay received by the white employee further supports Ms. Bhatt's assertions that she was discriminated against, retaliated against, underpaid, and improperly denied reclassification to an ESS III.


## COUNT I
### (Interference with Rights under the FMLA)

44.     Plaintiff incorporates all previous allegations as though set forth fully herein.

45.     At all relevant times, Defendant was an employer within the meaning of the FMLA.

46.     At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA.

47.     At all relevant times, Plaintiff received FMLA to care for her son who has a medical condition that qualifies for leave under the FMLA.

48.     Defendant violated the FMLA by subjecting Ms. Bhatt to a lower evaluation than she deserved on December 30, 2015, lower pay, disciplinary action, and different terms and conditions of employment because she took FMLA leave.

49.     Defendant violated the FMLA by subjecting Ms. Bhatt to severe and pervasive harassment based on her FMLA leave.

50.     Defendant violated the FMLA by wrongfully terminating Ms. Bhatt based on her FMLA leave.

## COUNT II

### (Discrimination in violation of the FMLA)

51.     Plaintiff incorporates all previous allegations as though set forth fully herein.

52.     Defendant subjected Ms. Bhatt to a lower performance review than she deserved, lower pay, disciplinary action, and different terms and conditions of employment because she took FMLA leave and because she exercised her rights under the FMLA.

53.     Defendant violated the FMLA by subjecting Ms. Bhatt to severe and pervasive harassment based on her FMLA leave and because she exercised her rights under the FMLA.

54.     Defendant violated the FMLA by wrongfully terminating Ms. Bhatt based on her FMLA leave and because she exercised her rights under the FMLA.

## COUNT III
### (Disability Discrimination and Harassment in Violation of the Rehabilitation Act)

55.     Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

56.     Defendant discriminated against Plaintiff in violation of the Rehabilitation Act by subjecting her to severe or pervasive harassment on the basis of her disability

- 8 -

and need for reasonable accommodations, and based on associational discrimination against her based on her son's disability, which created a hostile work environment.

57.     Defendant discriminated against Plaintiff in violation of the Rehabilitation Act by subjecting her to a lower performance evaluation than she deserved, lower pay, disciplinary action, and different terms and conditions of employment based on her disability and need for reasonable accommodations, and as associational discrimination against her based on her son's disability.

58.     Defendant subsequently discriminated against Plaintiff, in violation of the Rehabilitation Act, by wrongfully terminating her employment.

59.     As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life, and other monetary and non-monetary benefits due her.

**COUNT IV**
**(Retaliation in Violation of the Rehabilitation Act)**

60.     Plaintiff incorporates all previous allegations as though set forth fully herein.

61.     Defendant retaliated against Plaintiff, in violation of the Rehabilitation Act, because she engaged in protected activity by requesting reasonable accommodations for her medical conditions.

62.     Defendant retaliated against Plaintiff, in violation of the Rehabilitation Act, by subjecting her to severe or pervasive harassment because she requested reasonable accommodations for her medical conditions.

63.     Defendant retaliated against Plaintiff, in violation of the Rehabilitation Act, by subjecting her to a lower performance evaluation than she deserved, lower pay, and disciplinary action because she requested reasonable accommodations for her medical conditions.

64.     As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

## COUNT V
### (Race Discrimination in Violation of 42 U.S.C. § 1981 Against Defendants David Dunaway and Daniel Czecholinski in their Personal Capacities)

65.     Plaintiff incorporates all previous allegations as though set forth fully herein.

66.     Plaintiff was subjected to severe or pervasive race harassment by Mr. Dunaway.

67.     Plaintiff was subjected to a lower performance evaluation than she deserved, less pay and disciplinary action based on her race by Mr. Dunaway and Mr. Czecholinski.

68.     Mr. Dunaway and Mr. Czecholinski treated Plaintiff less favorably than her white co-workers or non-South Asian co-workers with respect to the terms and conditions of her employment.

69.     Mr. Czecholinski and Mr. Dunaway discriminated against Ms. Bhatt based on her race, South Asian, by forcing Ms. Bhatt to assume new MAP goals and responsibilities, in addition to the goals set forth relating to her MAP in July 2015, which were already extensive.  These new job responsibilities were yet another means of denying Ms. Bhatt equal employment opportunities and targeting Ms. Bhatt for termination

70.     One or more other South Asian employees have also experienced race discrimination by Mr. Dunaway and Mr. Czecholinski.

71.     Mr. Czecholinski and Mr. Dunaway wrongfully terminated Ms. Bhatt based on her race.

72.     The discriminatory actions taken by Mr. Dunaway and Mr. Czecholinski

were intentional and purposeful,  and constitute reckless and callous disregard of Ms. Bhatt's rights and have directly and proximately caused her injury, including loss of economic opportunities and benefits, lost income, lost benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

**COUNT VI**

**(Sex Discrimination in Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Against Defendants David Dunaway and Daniel Czecholinski In Their Personal Capacities)**

73.     Plaintiff incorporates all previous allegations as though set forth fully herein.

74.     Plaintiff was subjected to a lower performance evaluation than she deserved, less pay, and disciplinary action based on her sex by Mr. Dunaway and Mr. Czecholinski.

75.     Mr. Dunaway and Mr. Czecholinski treated Plaintiff less favorably than her male co-workers with respect to the terms and conditions of her employment.

76.     Mr. Dunaway and Mr. Czecholinski acted under color of state law.

77.     Mr. Czecholinski and Mr. Dunaway discriminated against Ms. Bhatt based on her sex, female, by forcing Ms. Bhatt to assume new MAP goals and responsibilities, in addition to the goals set forth relating to her MAP in July 2015, which were already extensive.  These new job responsibilities were yet another means of denying Ms. Bhatt equal employment opportunities and targeting Ms. Bhatt for termination

78.     One or more other female employees have also experienced sex discrimination by Mr. Dunaway and Mr. Czecholinski.

79.     Mr. Czecholinski and Mr. Dunaway wrongfully terminated Ms. Bhatt based on her sex.

80.     The actions taken by Mr. Dunaway and Mr. Czecholinski were intentional

and purposeful, and constitute reckless and callous disregard of Ms. Bhatt's rights and have directly and proximately caused her injury, including loss of economic opportunities and benefits, lost income, lost benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    A.    For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendant's conduct;

    B.    For reinstatement;

    C.    For front pay in lieu of reinstatement;

    D.    For an award of compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses, in amounts to be determined at trial;

    E.    For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendant's conduct;

    F.    For an award of interest;

    G.    For an award of attorneys' fees and related expenses;

    H.    For an award of Plaintiff's costs of suit incurred herein; and,

    I.    For an award of such other relief as the Court may deem just and proper.

## REQUEST FOR JURY TRIAL

1.    Plaintiff demands a jury trial on all claims and issues set forth herein.

RESPECTFULLY SUBMITTED this 29th day of December, 2017.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBAINA & KRESIN PLLC

By /s/Meenoo Chahbazi
    Meenoo Chahbazi
    Attorney for Plaintiff Vinita Bhatt